IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| JOSEPH MUNDY,<br><br>      **Plaintiff,**<br><br>v.<br><br>**LIFE INSURANCE COMPANY OF NORTH AMERICA**, in its capacity as Administrator of the Yellow Roadway Corporation Long-Term Disability Benefits Plan, Yellow **ROADWAY CORPORATION LONG-TERM DISABILITY BENEFITS PLAN**, Yellow **TRANSPORTATION, INC.**<br><br>      **Defendants.** | Case No.: 08 C 1576<br><br>Judge Bucklo<br><br>Magistrate Judge Valdez |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT DISCOVERY REGARDING COUNT II**

Defendants, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), and YELLOW ROADWAY CORPORATION LONG-TERM DISABILITY INSURANCE PLAN ("LTD Plan"), by their undersigned counsel, respectfully submit this Response in Opposition to Plaintiff's Motion for Leave to Conduct Discovery Regarding Count II:

### I.    INTRODUCTION

Mundy has filed suit against the LTD Plan and LINA under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking to recover long-term disability ("LTD") benefits. The LTD Plan provides benefits to eligible employees of Yellow Transportation, Inc. ("Yellow") and its affiliates. LINA administers and insures LTD benefits under a group policy ("Policy") it issued to Yellow. LINA administers (but does not insure) the short-term disability ("STD") benefits that Yellow provides to employees.

The arbitrary and capricious standard of review applies to Mundy's claim for LTD benefits. Under this standard, discovery and evidence are generally limited to the administrative

record. Extra-record discovery is permitted only if a claimant identifies a specific instance of misconduct or conflict of interest and shows that discovery will likely reveal a procedural defect in the decision on his claim. Mundy has not, however, made such a showing. Indeed, LINA considered over 1,000 pages of medical records and consulted no fewer than five experts to determine whether Mundy qualified for LTD benefits. Those medical experts meticulously considered and analyzed all the evidence submitted. The record itself demonstrates that LINA fully and fairly evaluated the claim. Therefore, discovery outside the record is prohibited and Mundy's motion to conduct discovery should be denied.

Assuming *arguendo* the *de novo* standard of review applied, discovery beyond the administrative record would be allowed only if it were necessary for this Court to reach an informed and independent judgment about whether Mundy qualifies for LTD benefit. The 1,260 page record of LINA's investigation of Mundy's claim is more than sufficient to enable the Court to reach an independent judgment about his eligibility. Thus, Mundy's motion to conduct discovery should be denied regardless of the standard of review.

## II.     FACTUAL BACKGROUND

Prior to January 2005, Mundy worked for a Yellow affiliate as a linehaul supervisor. According to Yellow's job description, this position was sedentary and entailed no physical demands beyond sitting. (Administrative Record, portions of which are attached as Ex. A, 964-66, 1256). In January 2005, Mundy submitted a claim to LINA for STD benefits after he experienced amaurosis fugax – a transient loss of vision in the right eye. (Record 1256). Under Yellow's STD program, an employee is deemed disabled if, because of injury or sickness, the employee is continuously unable to perform all the duties of his occupation. (1105).

LINA initially approved Mundy's claim for STD benefits. (1261). Later, Mundy's hematologist, Jose Paredes, reported that overall Mundy was healthy, although he had vascular

disease and activated protein C resistance, which is a risk factor for thromboembolism (blood clots). (1204-05, 1142). Dr. Paredes did not find that the conditions prevented Mundy from performing any aspect of his occupation. (*Id.*). In a March 26, 2005 note, Mundy's cardiologist, Robert Gasior, stated that Mundy had atheromatous change in the carotid arteries (deposits of lipids on the inside of the arterial walls). Dr. Gasior did not find that Mundy's vascular condition prevented him from performing any of the duties of his job. However, Dr. Gasior stated that not working would "facilitate [Mundy's] overall wellbeing" because his sedentary job was stressful. (1146).

On April 22, 2005, LINA's medical director, R. Norton Hall, reviewed these records and concluded that there was no evidence that Mundy's condition prevented him from performing his occupation. (1187). Effective May 15, 2005, LINA terminated Mundy's STD benefits. (1179). Mundy's counsel appealed (936-40) and submitted a transcript of an interview (871-900) with Mundy's physician, James Tess. However, Dr. Tess did not find that Mundy's vascular condition prevented him from performing his prior occupation. Instead, Dr. Tess stated that the job created a risk of elevated blood pressure that might bring on vascular changes in the carotid arteries. (888-89). Also submitted with the appeal was a report on a neuropsychological exam conducted by Jay Gottfried, a professor of neurology at Northwestern University. Dr. Gottfried stated that Mundy had a normal mental exam and normal cognitive functioning with "very mild executive function impairments." Mundy did not have multiple sclerosis, Alzheimer's disease, or cerebrovascular disease. An MRI and the exam showed no evidence of stroke or significant chronic ischemic disease. Dr. Gottfried strongly urged Mundy to reduce his level of smoking and drinking. (959).

3

To evaluate the appeal, LINA consulted with Dr. Charles M. McCool. After analyzing the records of Mundy's providers, Dr. McCool opined that he had not been diagnosed with any medical condition that prevented him from performing the duties of his occupation as a dispatcher. (911-13). LINA denied the appeal based on the evidence and Dr. McCool's assessment. (924).

In September 2006, LINA received Mundy's initial claim for LTD benefits. (807, 44, 39). LINA's Policy provided that initially an employee would be deemed disabled if, because of injury or sickness, he was unable to perform all the duties of his original occupation. To evaluate the LTD claim, LINA referred Mundy's complete file to John Manfredi, a physician certified in hematology and oncology. In a November 21, 2006 report, Dr. Manfredi noted that: (1) Mundy had demonstrated a normal mental exam and cognitive functioning during Dr. Gottfried's evaluation; (2) his protein C resistance had been treated and had not caused recurrent thromboses; (3) the stenosis of his carotid arteries was moderate and did not warrant surgery. (805).

On November 30, 2006, Mundy's counsel submitted additional forms for the claim for LTD benefits but no new evidence. (852). In the spaces for listing Mundy's medical conditions, Mundy wrote "See letters in short-term claims file." (853, 856). On December 6, 2006, LINA denied Mundy's claim for LTD benefits based on Dr. Manfredi's report. (797-98).

In April 2007, Mundy's counsel appealed LINA's determination that Mundy did not qualify for STD benefits or LTD benefits. (253). The new material included with the appeal consisted of a notice (255-70) that the Social Security Administration ("SSA") had awarded Mundy Social Security Disability Insurance ("SSDI") benefits and a neuropsychological evaluation conducted by Alison J. Donnell. (274-78). In her June 2006 report, Dr. Donnell

found that Mundy had average intellectual capabilities (277), high average verbal intelligence (276), and mild to moderate cognitive impairment in processing speed and sustained attention. (277). Dr. Donnell, like Dr. Gottfried, encouraged Mundy to discontinue his heavy smoking and drinking. (278).

LINA asked R. Kevin Smith, a physician board certified in occupational and environmental medicine, to evaluate whether Mundy's medical conditions prevented him from performing his occupation. (247, 248). Dr. Smith prepared a comprehensive medical history based on Mundy's records. (235-47). He noted that none of Mundy's physicians found that his vascular conditions prevented him from performing his occupation. Though Dr. Tess claimed that job stress might increase his blood pressure, he had not placed him on stress management therapies. (245). Since Mundy had quit working, he had gained weight and was drinking more, which indicated that the absence of work had made his habits worse. (245). Dr. Smith concluded that Mundy's conditions did not preclude him from working. (245)

LINA consulted with John P. Shallcross, a clinical psychologist, to evaluate whether Mundy's cognitive condition precluded him from working. (230-34). Dr. Shallcross noted that Dr. Gottfried found that Mundy had a normal neurological exam with no impairments. While Dr. Donnell found he had some cognitive impairment, he demonstrated average cognitive ability and the REBANS test showed no significant impairment. Dr. Shallcross concluded that the evidence revealed no neurocognitive impairment that would preclude Mundy from performing his occupation. (233). On August 24, 2007, LINA denied the appeal based on the analyses of Drs. Shallcross and Smith. (226).

### III.   LEGAL ARGUMENT

**A.   Because the deferential standard of review applies to Mundy's claim, extra-record discovery is prohibited and the motion for leave to conduct discovery should be denied.**

The scope of discovery and evidence in ERISA benefits litigation is limited. "Like a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding." *Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 875 (7th Cir. 1997). When the deferential "arbitrary and capricious" standard of review applies, discovery into "the thought processes of the [claim administrator's] staff, the training of those who considered [the] claim, and in general who said what to whom within [the claim administrator]" is not permitted. *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 981-82 (7th Cir. 2000). Allowing onerous discovery in ERISA litigation would frustrate a primary goal of the statute: providing a "method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Semien v. Life Ins. Co. of North America,* 436 F.3d 805, 815 (7th Cir. 2006).

*De novo* review is the default standard. The deferential standard of review applies if the documents governing an employee benefit plan grant the claim administrator discretionary authority to decide claims for benefits or to interpret the plan's terms. *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005); *Ruiz v. Continental Cas. Co.,* 400 F.3d 986, 991 (7th Cir. 2005). Here, the Group Disability Insurance Certificate grants LINA discretionary authority that triggers deferential review. (Docket # 36-2). It provides that:

> The Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. **The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.** All decisions made by the Insurance Company shall be final and

6

> binding on Participants and Beneficiaries to the full extent permitted by law. (Docket # 36-2 p. 30).

This language clearly triggers application of the deferential standard of review. *Semien*, 436 F.3d at 811-812; *Shyman*, 427 F.3d at 455; *Ruiz,* 400 F.3d at 991.

Mundy argues that the Group Disability Insurance Certificate does not control the standard of review because it is not part of the Policy. Mundy overlooks that the Policy itself expressly mentions and incorporates the Group Disability Insurance Certificate. It states:

> A certificate of insurance will be delivered to the Employer for delivery to the Insureds. <u>Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid</u>. (Docket # 44-3 p. 48 emphasis added).

Since the insurance certificate is incorporated into the Policy, the certificate's grant of discretion triggers the deferential standard of review. This conclusion is compelled by *Shyman*, 427 F.3d 452. There, the "package" of plan documents consisted of a group policy, a summary plan description, and a certificate of insurance. The group policy and SPD did not grant the insurance company discretion, but the certificate of insurance did. The court held that the grant of discretion in the certificate of insurance triggered deferential review:

> [the plan documents state that] the certificate of insurance is part of the policy, unless it contradicts some other clause–and Shyman does not contend that the discretion-granting language contradicts either the summary plan description or any clause of any other document. It is unimportant that one document is captioned "certificate" and another bears the legend "policy;" if the discretion-granting language can be on any page of a multi-page plan (and it can), then the fact that this page bears its own caption is irrelevant. 427 F.3d at 455.

Mundy cites *Schwartz v. Prudential Ins. Co. of America*, 450 F.3d 697 (7th Cir. 2006), and *Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635 (7th Cir. 2005), to support his argument that the certificate's grant of discretion is ineffective. These cases are distinguishable. They hold that, if discretion-granting language appears in a summary plan description ("SPD") but not the actual plan document, the standard of review is de novo because the SPD is not a

7

binding plan document, but only a summary of the plan document. This principle does not help Mundy because the Group Disability Insurance Certificate is incorporated into the Policy and thus made a binding plan document. Accordingly, the deferential standard applies.

When the standard of review is deferential, the plaintiff can obtain discovery only if he: (1) identifies a specific conflict of interest or instance of misconduct; and (2) makes a prima facie showing that there is good cause to believe that limited discovery will reveal a procedural defect in the plan administrator's decision. *Semien,* 436 F.3d at 815. "[T]his standard presents a high bar for individuals whose claims have been denied by a [claim] administrator with discretionary authority." *Id.*

Mundy has not made and cannot make a showing that meets this standard. LINA fully and fairly considered Mundy's application for benefits. LINA compiled 1,260 pages of records related to Mundy's medical conditions and occupational duties. To evaluate whether his cognitive or vascular conditions precluded him from performing his occupation, LINA consulted with five experts: Dr. Hall, a medical director; Dr. McCool, another medical director; Dr. Manfredi, a hematologist; Dr. Shallcross, a clinical psychologist; and Dr. Smith, an occupational physician.

The physicians and psychologist thoroughly reviewed and analyzed Mundy's records. The physicians found that Mundy was not disabled because, while he had a single episode of amaurosis fugax, his vascular condition was mild, it did not warrant surgery, and his physicians had not found him incapable of performing any duty of his occupation. The clinical psychologist noted that the neuropsychological testing was generally normal and documented only mild deficits. The quality of the analyses provided by the consulting experts demonstrates that LINA fully and fairly analyzed Mundy's claims. Because Mundy cannot demonstrate that misconduct

or a procedural irregularity occurred, discovery must be limited to the administrative record. *Semien*, 436 F.3d at 815; *Perlman*, 195 F.3d at 981; *Broeski v. Provident Life and Acc. Ins. Co.*, 2007 WL 1704012, *3-*4 (N.D. Ill. 2007); *Smith v. Accenture U.S. Group Long Term Disability Ins. Plan,* 2006 WL 2792695, *2 (N.D. Ill. 2006); *Rubber Shop v. Benicorp Ins. Co.*, 238 F.R.D. 618, 623 (N.D. Ind. 2006) (all denying motions for discovery).

Any contention that the Supreme Court's recent decision in *Metropolitan Life Ins. Co. v. Glenn,* 128 S.Ct. 2343 (2008), expanded the discovery available under arbitrary and capricious review is unsupported. *Glenn* held that, when an insurance company both decides whether benefits are payable under an ERISA plan and pays the benefits with its own funds, a conflict of interest is present. The Court held that this dual role was one among many factors to be considered in determining whether the insurer's denial of benefits was reasonable. The Court did not address discovery or alter the procedural framework for resolving ERISA cases. *Glenn* affords no support for taking discovery when the deferential standard applies, as the court in *Dubois v. Unum Life Ins. Co. of America,* 2008 WL 2783283, *2-*3 (D. Me. 2008), held. *Cf. Gutta v. Standard Select Trust Ins.*, 2008 WL 3271414, *1 (7th Cir. 2008) (*Glenn* clarified manner for considering conflict of interest but did not alter rule for deciding which standard of review applies).

Mundy makes two factually incorrect arguments in attempting to demonstrate a procedural irregularity. Mundy mistakenly argues, based on a note by claim manager Charles Montabon (25), that LINA denied his April 2007 appeal simply because it had denied his earlier appeals relating to STD benefits. (Mtn. ¶ 9-10). The record refutes this allegation. To decide the final appeal, LINA consulted with two independent experts: the occupational physician Dr. Smith and the clinical psychologist Dr. Shallcross. These experts had no involvement in LINA's

6350438v2 51096

earlier decisions to deny Mundy's claims. They prepared meticulous reports and explained in detail their conclusion that Mundy did not suffer from conditions that precluded him from performing his prior job.

Mundy asserts that LINA denied his claim for LTD benefits a mere six days after it was received. (Mtn. ¶ 10). It is true that LINA decided the claim on December 6, 2006 and Mundy's counsel submitted the long claim forms on November 30, 2006 (37, 852). However, Mundy's counsel submitted the initial claim for LTD benefits in September 2006. (807, 44, 39). To support the LTD claim, Mundy relied on the same evidence he submitted to support the STD claim. (852). Dr. Manfredi prepared a report on Mundy's eligibility for LTD benefits in mid-November 2006. (804-05). Thus, LINA decided the LTD claim well after it originally obtained and analyzed the supporting evidence. The record discredits Mundy's claim that LINA's decision was hasty. Mundy has failed to establish a basis for conducting the discovery he seeks.

> **B.     Even if, *arguendo*, the standard of review is *de novo*, Mundy's motion should be denied because the record alone will enable the Court to reach an informed and independent judgment about his eligibility for benefits.**

When the *de novo* standard applies to an ERISA claim, "a district court may review evidence beyond that which was before the claim administrator only when circumstances clearly establish that additional evidence is necessary, but [] as a general matter the district court should restrict itself to the evidence before the plan administrator." *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994). In exercising its discretion concerning discovery, a court should consider: (1) most importantly, whether new evidence is necessary to make an "informed and independent judgment," which depends "on the nature of the claims and whether the administrative record was 'relatively undeveloped' with respect to those claims;" (2) whether the parties had an opportunity to present evidence at the administrative level; (3) whether the extra-record discovery relates to the plan terms or historical facts concerning the claimant; and (4)

whether the administrator faces a conflict of interest. *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 490-91 (7th Cir. 2007). A district court should not:

> automatically admit new evidence whenever it would help to reach an accurate decision. *Any* relevant evidence increases the likelihood of an accurate decision but always at the price of increased cost, both in the form of more money and additional time. … <u>The record calls for additional evidence only where the benefits of increased accuracy exceed the costs, a balance familiar to the district court</u>. *Id.* at 492 (emphasis added).

Applying the *Patton* factors here strongly counsels against allowing the discovery Mundy seeks. A review of the 1,260 page record demonstrates that the Court can reach an "informed and independent" judgment regarding his eligibility for benefits based on the record alone. The record is not relatively undeveloped with respect to question of Bake's training, education, job requirements, medical conditions or functional ability. There are hundreds of pages of medical records that analyze those subjects at length. By reviewing the underlying medical evidence, and comparing it with the analyses of Drs. Hall, McCool, Smith, Gottfried, and Shallcross, the Court can reach an "informed and independent judgment" about Mundy's eligibility for benefits.

Further, Mundy had an opportunity at the administrative level to present evidence in favor of his position. He was represented in his administrative appeals by a sophisticated lawyer who specializes in ERISA litigation. He should not be allowed to support his claim in litigation with evidence that LINA never had an opportunity to consider.

Mundy is not seeking to develop evidence relating to the meaning of the Plan terms or historical facts about himself, which are the categories of evidence that the *Patton* court stated might be appropriate for discovery. Mundy seeks LINA's claims procedure manual and information about the relationship between LINA and the experts who reviewed his claim on LINA's behalf. The Court can evaluate the reliability and thoroughness of LINA's decision and the reports of the experts by comparing them to the underlying medical records. This discovery

Mundy seeks is not necessary for the Court to independently analyze his eligibility for benefits.

Last, the cost of conducting the discovery is not outweighed by any increase in accuracy associated with that evidence. The material sought will provide no information about Mundy's medical condition and convey no information beyond what is already set out in the 1,260 page record. The discovery is not cost-benefit justified. As a result, even if the Court finds that the *de novo* standard governs this case, Mundy's motion to conduct discovery should be denied.

## IV.   CONCLUSION

This case is governed by the deferential standard of review. The record demonstrates that LINA fully and fairly evaluated Mundy's eligibility for benefits. Hence, *Semien v. Life Ins. Co. of North America,* 436 F.3d 805, 815 (7th Cir. 2006), and *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 981-82 (7th Cir. 2000), foreclose Mundy from conducting the discovery he seeks. Even if the *de novo* standard applies, Mundy's motion should be denied because he has failed to establish that discovery is necessary for this Court to reach an informed and independent judgment about his claim or that the cost of the discovery is outweighed by any increase in the likelihood that the Court will reach an accurate judgment. For these reasons, LIFE INSURANCE COMPANY OF NORTH AMERICA and YELLOW ROADWAY CORPORATION LONG-TERM DISABILITY INSURANCE PLAN respectfully submit that this Honorable Court should deny the motion for leave to conduct discovery regarding Count II.

| | |
|---|---|
| Daniel K. Ryan<br>Peter E. Pederson<br>HINSHAW & CULBERTSON LLP<br>222 N. LaSalle Street, Suite 300<br>Chicago, Illinois  60601<br>(312) 704-3000<br>**Fax:**  (312) 704-3001<br>dryan@hinshawlaw.com<br>ppederson@hinshawlaw.com | Respectfully submitted:<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA and YELLOW ROADWAY CORPORATION LONG-TERM DISABILITY INSURANCE PLAN<br><br>By:  /s/ Peter E. Pederson<br>        One of their Attorneys |

6350438v2 51096

6350438v2 51096

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that, on August 19, 2008, I e-filed this document using the Court's CM/ECF filing system, which will make a copy available to counsel of record identified below.

s/ Peter E. Pederson

## SERVICE LIST

Roger Sanford Hutchison, Esq.
rsh@dobbsandhutchison.com
DOBBS AND HUTCHISON
47 W Polk St
Chicago, IL 60605-2000

William R Pokorny, Esq.
wrp@franczek.com
FRANCZEK SULLIVAN P.C.
300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606

6350438v2 51096